BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
JAMES G. TOUHEY, Jr.
Director, Torts Branch
THEODORE W. ATKINSON (D.C. Bar No. 458963)
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888, Benjamin Franklin Station
Washington, D.C., 20044
Theodore.Atkinson@usdoj.gov
Tel: (202) 616-4266
*Attorneys for Defendant United States of America*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| RIAN DUNDON, | Case No.: 3:22-cv-00594-SI |
| Plaintiff, | **DEFENDANT UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |
| v. | |
| UNITED STATES OF AMERICA., | |
| Defendant. | |

**DEFENDANT UNITED STATES OF AMERICA'S
<u>REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## INTRODUCTION

This Court should dismiss Plaintiff's negligent training claims for lack of subject matter jurisdiction because they are barred by the discretionary function exception of the Federal Tort Claims Act ("FTCA"). The Court should also dismiss Plaintiff's false arrest, battery, negligence, negligent infliction of emotional distress ("NIED"), and intentional infliction of emotional distress ("IIED") claims for failure to state a claim under Oregon law.

Nothing in Plaintiff's opposition memorandum argues persuasively to the contrary. Plaintiff has stipulated to the dismissal of his negligence claim for negligent supervision because it is barred by the discretionary function exception. The discretionary function exception also bars Plaintiff's negligent training claims because Plaintiff has admitted in his opposition memorandum that he failed to meet his burden under the first prong of *Gaubert v. United States*, 499 U.S. 315 (1991), and because Plaintiff cannot meet his burden under the second prong of *Gaubert*. Accordingly, the negligence claim should be dismissed in full for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). For the same reasons, Plaintiff's NIED claim should be dismissed to the extent it is premised on negligent supervision or training allegations. Alternatively, the NIED claim should be dismissed to the extent it is premised on intentional acts.

The Court should also dismiss Plaintiff's state law claims for false arrest, battery, negligence, NIED, and IIED for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As discussed below, Plaintiff now narrows his battery and false arrest claims to certain alleged encounters with federal law enforcement and not others, and now asserts that his NIED claim is based on intentional conduct that falls outside the scope of an NIED claim. Plaintiff has also failed to show how the Complaint satisfies the elements for an IIED claim. For these

reasons, Plaintiff's opposition has not shown that he has stated a claim under Oregon law.  This Court should dismiss those claims.

**I.      Plaintiff's Negligence Claims Are Barred by the Discretionary Function Exception.**

In its motion to dismiss, the United States argued that the Complaint's only allegations of negligence were allegations of negligent supervision and negligent training, and that those allegations – incorporated in the negligence and NIED claims of the Complaint – are barred by the discretionary function exception.  ECF No. 39 at 5-10.  Plaintiff has responded by agreeing to dismiss his negligent *supervision* allegations as barred by the discretionary function exception, but maintains that his negligent *training* allegations are not barred.  For the reasons discussed below, Plaintiff is incorrect and his negligent training allegations incorporated in the negligence and NIED claims of the Complaint should also be dismissed as barred by the discretionary function exception.

Moreover, in an effort to avoid application of the discretionary function exception to his NIED claim, Plaintiff now takes the position that the NIED claim is based on *intentional* conduct, not *negligent* conduct, in contrast to the language of the Complaint.  As discussed below, to the extent Plaintiff's NIED claim is based on allegations of negligent training in the Complaint, it should likewise be dismissed based on the discretionary function exception. Alternatively, as discussed in section II.D below, to the extent Plaintiff's NIED claim is based on intentional conduct, Plaintiff's NIED claim should be dismissed on the alternative ground that such claims cannot be based on intentional conduct under Oregon law.

A.      Plaintiff's stipulated dismissal of his negligent supervision claim should extend to dismissal of his NIED claim to the extent it arises from negligent supervision.

The United States moved to dismiss Plaintiff's claims of both negligence and NIED for lack of subject matter jurisdiction under the discretionary function exception of the FTCA, 28

U.S.C. § 2680(a), insofar as they were based on allegations of negligent supervision and training. ECF No. 39 at 5-10.  In his response, Plaintiff "agree[d] that the discretionary function exception likely bars Plaintiff's claim for negligent supervision," and thus "stipulate[d] to the dismissal of that claim . . . ."  ECF No. 46 at 6 n.4.  Accordingly, Plaintiff has abandoned his negligent supervision claim.

Correspondingly, the Court should also dismiss Plaintiff's NIED claim for lack of subject matter jurisdiction under the discretionary function exception to the extent the NIED claim is based on Plaintiff's allegations of negligent failure to supervise the federal law enforcement officers Plaintiff allegedly encountered.  Plaintiff does not dispute that immunized conduct subject to the discretionary function exception cannot be used to pursue a different claim through "creative pleading" that seeks to "circumvent immunity."  *See Schurg v. United States*, 584 F. Supp. 3d 893, 910 (D. Mont. 2022), *aff'd sub nom. Schurg v. United States*, 63 F.4th 826 (9th Cir. 2023).  To the extent Plaintiff's NIED claim is rooted in the same negligent supervision allegation as the negligence claim Plaintiff has now agreed to dismiss, the NIED claim should also be dismissed under the discretionary function exception.

B.     Plaintiff's negligent training claim should also be dismissed under the discretionary function exception.

The Court should also dismiss Plaintiff's negligence and NIED claims insofar as they are premised on the Complaint's allegations of negligent training.  Plaintiff has not met his burden under the first prong of *Gaubert*, as applied by the Ninth Circuit, to plead his negligence or NIED claims in a way that is facially outside the discretionary function exception.  Plaintiff's failure to meet this pleading burden warrants dismissal.  With respect to the second prong of *Gaubert*, Plaintiff incorrectly conflates the existence of a mandate as eliminating any possible

policy analysis with respect to law enforcement training.  The Court should reject Plaintiff's policy analysis arguments as they apply to his negligent training claim.[1]

First, Plaintiff does not dispute that under the first prong of *Gaubert* and Ninth Circuit law, Plaintiff has the burden to advance a claim by a pleading "that is facially outside the discretionary function exception in order to survive a motion to dismiss."  *Prescott v. United States*, 973 F.2d 696, 702 n.4 (9th Cir. 1992) (citing *Carlyle v. U.S. Dep't of the Army*, 674 F.2d 554, 556 (6th Cir. 1982) (a plaintiff must first "successfully invoke[] jurisdiction by a pleading that facially alleges matters not excepted" by the FTCA).  Plaintiff has failed to do so.  Nowhere in Plaintiff's Complaint does he identify any statute, regulation, or directive that circumscribed how federal officials trained the law enforcement officers whom Plaintiff allegedly encountered.  Indeed, Plaintiff appears to recognize his failure to do so.  ECF No. 46 at 8 n.6 ("Plaintiff does not refer to the legal mandate set forth in § 1315 in his pleading. To the extent that he must, Plaintiff requests leave to replead.").

Instead, Plaintiff points for the first time in his opposition memorandum to a document which he asserts is entitled "*Guidelines for the Exercise of Law Enforcement Authorities by Officers and Agents of the Department of Homeland Security*," and which he claims, "upon information and belief," requires officers to complete basic law enforcement training and periodic refresher training before exercising authority as cross-designated law enforcement

---

[1]  Plaintiff misconstrues the United States as arguing that negligent training claims are categorically barred by the discretionary function exception and cites several cases in which courts have found the discretionary function not to apply to negligent supervision and training claims.  ECF No. 46 at 6.  However, the United States did not take the position in its motion to dismiss that such claims are *categorically* subject to the discretionary function exception.  Rather, the United States argued that Plaintiff's negligent training claims are barred by the discretionary function exception because he failed to meet his burden with respect to the two-prong test of *Gaubert*.  Nothing in Plaintiff's opposition memorandum is persuasive to the contrary for the reasons discussed below.

officers under 40 U.S.C. § 1315. ECF No. 46 at 7.[2] But "[m]otions and oppositions to motions are not pleadings," and his reliance on the aforementioned document in his opposition memorandum is unavailing. *Taylor v. Borders*, No. CV1802488TJHAGRX, 2021 WL 9721279, at *1 (C.D. Cal. Nov. 4, 2021). Plaintiff made no effort to identify in the Complaint – where he was required to do so – any provision in these guidelines that impose mandatory and specific training directives, and thus has further failed to meet his pleading burden under prong one of *Gaubert*. The Court should dismiss his negligence claim under the discretionary function exception.[3]

Second, the training of law enforcement officers necessarily involves decisions that are susceptible to policy analysis, satisfying the second prong of *Gaubert*. Courts, including the Ninth Circuit, have repeatedly recognized that the training of federal employees involves the weighing of policy considerations that the discretionary function exception was designed to

---

[2] Plaintiff also states that the alleged failure to train the federal law enforcement officers Plaintiff encountered "violated the legal mandate set forth under 40 U.S.C. § 1315." ECF No. 46 at 7. However, there is no provision of 40 U.S.C. § 1315 that addresses training of federal law enforcement officers. The statute is an enabling statute providing department secretaries with authority to cross-designate law enforcement officers, and to promulgate related regulations. *See id.*

[3] In a footnote, Plaintiff also argues that the actions of the United States violated Plaintiff's First Amendment rights, which serves as a "legal mandate" that prevents the conduct of the law enforcement officers from being discretionary. ECF No. 46 at 9 n.8. But to the extent the NIED claim is based on intentional conduct by law enforcement officers, it must be dismissed for the reasons just explained. To the extent the NIED claim is based on negligence, it can only be based on negligent training, which is subject to the discretionary function exception for the reasons stated above. *See supra* at Section I.B. Regardless, Plaintiff has not alleged in the Complaint how the First Amendment provides mandatory and specific directives regarding the training of federal law enforcement officers subject to cross-designation under 40 U.S.C. § 1315. The Court should reject Plaintiff's argument.

protect.[4]  Plaintiff does not attempt either to distinguish those cases, or to demonstrate that decisions concerning the training of federal personnel are not inherently susceptible to policy analysis.  ECF No. 39 at 8 (citing *Gartner v. United States,* No. 6:16-CV-01680-JR, 2017 WL 658855, at *9 (D. Or. Feb. 15, 2017)).

Plaintiff instead conflates the inquiry under the second prong of *Gaubert* with the first, presenting any policy consideration as co-extensive with the inquiry into whether there was a mandatory and specific directive that deprived the United States of discretion.  ECF No. 46 at 8 (citing *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000); and *Fidelity & Guaranty Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988)).  Both *Nurse* and *Fidelity & Guarantee Co.* stand for the proposition that conduct that violates a mandatory and specific directive cannot be discretionary, which goes to the first prong of *Gaubert*, not the second prong regarding susceptibility to policy analysis.  Plaintiff's argument ignores consideration of the policy analysis of the second prong of *Gaubert*, and leaves untouched the string of decisions that concluded that the training of federal employees involves the kind of policy analysis intended to be protected by the discretionary function exception.  The Court should reject Plaintiff's argument and conclude that the second prong of *Gaubert* is satisfied.

---

[4] *See* ECF No. 39  at 8-9, citing, among several others, *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("[t]his court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."); *Kelly v. United States*, 241 F.3d 755, 763 (9th Cir. 2001) (quoting *Vickers*, 228 F.3d at 950); *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) ("the decision of whether and how to retain and supervise an employee . . . are the type of discretionary judgments that the exclusion was designed to protect."); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("[t]he extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past.").

C.     <u>Because, by Plaintiff's own construction, the NIED claim is based on intentional tortious conduct, the NIED claim should be dismissed.</u>

The United States argued in its motion to dismiss that Plaintiff's NIED claim is barred by the discretionary function exception because it arises out of allegations in the Complaint of negligent training, and – for the reasons explained above – any claims based on such allegations cannot survive the discretionary function exception. Plaintiff does not dispute that to the extent his NIED claim is based on negligent training allegations, it is subject to the discretionary function exception. Instead, Plaintiff now insists that the NIED claim arises not out of *negligent* conduct, but out of *intentional* conduct. ECF No. 46 at 8-9 ("Plaintiff's NIED claim arises *not* out of any failures to train or supervise, but instead out of the federal agents' and officers' conduct in repeatedly and violently attacking journalists, including Plaintiff."). Specifically, Plaintiff cites to paragraphs in the Complaint alleging intentional tortious conduct on the part of officers he claims to have encountered, and asserts that this is not the "sort of conduct that is barred by the discretionary exception function." *Id.*

However, as discussed more fully in Section II.D below, an NIED claim is a "form of common law negligence." *D.E. v. Am. Airlines, Inc.*, No. 3:18-CV-01649-IM, 2020 WL 877812, at *6 (D. Or. Feb. 21, 2020) (citing *Paul v. Providence Health Sys.*, 351 Or. 587, 597 (2012)). If Plaintiff's NIED claim is based on allegations of intentional conduct, then the Complaint does not state a claim for NIED under Oregon law.

Thus, Plaintiff's NIED claim should be dismissed because it is either (1) based on factual allegations of *intentional* conduct, which is not a form of common law negligence and therefore does not state a claim of negligence under Oregon law and Federal Rule of Civil Procedure 12(b)(6) (as discussed below), or (2) based on allegedly negligent failures to train or supervise,

which should be dismissed under the discretionary function exception and Federal Rule of Civil Procedure 12(b)(1).  In either event, the Court should dismiss Plaintiff's NIED claim.

## II.  **Plaintiff has failed to state a claim for false arrest, battery, IIED, and NIED.**

A.  <u>Plaintiff admits his false arrest claims are limited to two alleged incidents, but has failed to state a claim for false arrest with respect to either incident.</u>

In response to the United States' argument that Plaintiff has not stated a claim for false arrest under Oregon law, Plaintiff now clarifies that his claim of false arrest extends only to his alleged encounters with federal law enforcement officials on July 17, 2020, and July 22, 2020. ECF No. 46 at 10.  However, Plaintiff's factual allegations regarding those alleged encounters are insufficient to state a claim for false arrest because, even if the allegations of the Complaint are taken as true and read in a light most favorable to Plaintiff, he was not confined on July 17, 2020, and he has not sufficiently pleaded that there was an intent to confine Plaintiff either on July 17, 2020, or on July 22, 2020.

As to the alleged July 17, 2020 incident, Plaintiff asserts that an unidentified federal law enforcement officer stood approximately 30 feet from Plaintiff, separated by a chain-link fence, and fired pepper balls that struck a fence and sidewalk near Plaintiff's feet, causing the pepper balls to burst and release pepper gas into the air.  ECF No. 29 (Complaint), ¶¶ 9-16.  Nowhere in his Complaint or in his opposition memorandum does Plaintiff contend he was restrained of his liberty and unable to leave on July 17, 2020.  In other words, Plaintiff does not allege he was confined during the alleged incident.  *See Roberts v. Coleman*, 228 Or. 286, 294-94 (1961) ("[T]he essential thing to constitute an imprisonment is restraint of the person …").  Instead, Plaintiff argues that "physical force is sufficient, but not necessary, to establish confinement," and cites two cases for the unremarkable proposition that confinement of a person *may be accomplished* through a variety of means including barriers, physical force, a threat to apply

physical force, or assertion of legal authority. ECF No. 46 at 11. Neither case stands for the proposition that such means *constitute* confinement, as Plaintiff now suggests, but only that they are potential means to accomplish confinement. *See Roberts*, 228 Or. at 294-94 (confinement may be accomplished "by threats as well as actual force . . . ."); *Gaffney v. Payless Drug Stores*, 261 Or. 148, 150-51 (1972) (recognizing that confinement may be accomplished by threats as well as force, but finding no confinement because the plaintiff did not submit to restraint by threat of legal authority). The difference between confinement and the means to accomplish confinement is critical. Plaintiff disregards that difference. Plaintiff has not alleged he was confined to any area on July 17, 2020 – whether by barriers, physical force, or the like – and thus his claim of false arrest concerning the alleged incident that day should be dismissed for failure to state a claim.

With respect to the incidents on July 17, 2020, and July 22, 2020, Plaintiff also has not sufficiently pleaded that the law enforcement officers intended to confine him. Plaintiff contends that the only reasonable inference arising from any use of force against him is an intent to confine Plaintiff. ECF No. 46 at 11. This disregards the distinction between confinement and the *intent* to confine, which must be separately shown under Oregon law. *Roberts*, 228 Or. At 293 ("[t]he act must be done with intent to confine . . . ."). The allegations of the Complaint, at best, support the element of restraint of Plaintiff on July 22, 2020, for a brief moment. But an allegation that there was confinement does not satisfy the separate element of the intent to confine, as Plaintiff suggests. The Complaint thus does not support any inference that an officer intended to confine Plaintiff rather than remove him from an area being cleared by law enforcement. For this reason, the Court should dismiss the false arrest claim with respect to the alleged July 17, 2020, and July 22, 2020 incidents.

B.    <u>Plaintiff has failed to state a claim for battery.</u>

The Complaint does not include factual allegations of harmful or offensive contact sufficient to state a claim for battery under Oregon law, either arising out of the general four-month period of Plaintiff's alleged assignment to cover the protests in Portland, or with respect to the specific law enforcement encounters he alleges occurred on July 11, 2020, and July 17, 2020, in particular.

In his opposition, Plaintiff does not attempt to refute the argument that allegations of generalized "violence" against Plaintiff over a broad four-month period from July 6, 2020, until November 3, 2020, are too vague and imprecise to be actionable battery.  ECF No. 39 at 14 (citing Complaint ¶¶ 7, 45).  Any battery claim based on those allegations should be dismissed.

With respect to Plaintiff's alleged specific encounters with federal law enforcement officers on July 11, 2020, and July 17, 2020, Plaintiff argues that "federal officers used teargas on him" on July 11, 2020, citing the Complaint at paragraph 29.  ECF No. 46 at 12.  But paragraph 29 of the Complaint alleges that federal officers used "tear gas to clear Plaintiff and other journalists from the [area]."  It is respectfully submitted that there is a material difference between law enforcement officers "us[ing] teargas on him," and "us[ing] tear gas to clear an area."  Notably, Plaintiff includes a photograph in paragraph 29 of the Complaint, purportedly from July 11, 2020, showing a cloud of chemical dispersant some distance away, with no one – including Plaintiff – visible in the photograph.  ECF No. 39 ¶ 29.   In short, the specific allegation in the Complaint that tear gas was used to clear an area near Plaintiff does not support a claim of battery, and is materially different from Plaintiff's assertion in his opposition  that tear gas was used on him.

Similarly, Plaintiff argues in his opposition memorandum that the "pepper balls that federal officers shot at him on July 17, 2020, came into contact with" Plaintiff.  ECF No. 46 at 12.  Again, however, the allegations of the Complaint differ, alleging that a federal law enforcement agent "fired several rounds of pepper balls, striking the fence and sidewalk near [Plaintiff's] feet," Complaint ¶ 15, which "exploded on contact and released a powder into the air."  Complaint ¶ 16.  Thus, the allegations of the Complaint plainly state that the pepper balls came into contact with the fence and the ground near Plaintiff and released powder that went "into the air" – he does not allege the pepper balls or the powder contacted Plaintiff himself.

These differences matter.  To the extent Plaintiff now seeks in his opposition to characterize the contact he alleges gives rise to his battery claim as direct contact, the allegations of the Complaint belie that characterization.  The allegations regarding the July 11, 2020 and July 17, 2020 encounters with federal law enforcement do not show the kind of direct or indirect contact with Plaintiff that may give rise to a claim of battery.

C.    Plaintiff has failed to state a claim for IIED.

To prove his IIED claim, Plaintiff must show that the federal law enforcement officers he allegedly encountered "intended to inflict severe mental or emotional distress on the plaintiff, that the defendant's actions consisted of some extraordinary transgression of the bounds of socially tolerable conduct or exceeded any reasonable limit of social toleration."  *Patton v. J.C. Penney Co.*, 301 Or. 117, 122 (1986) (internal quotations omitted).  A claim of intentional infliction of emotional distress requires Plaintiff to show that the conduct to which he was subjected breaches the ordinary barriers of tortious conduct – such as battery, false arrest, or the like – and was "outrageous in the extreme."  *Hetfeld v. Bostwick*, 136 Or. App. 305, 308 (1995).  Moreover, Plaintiff's IIED claim cannot survive unless he shows that "the actor desire[d] to

inflict severe emotional distress, and also where [the actor] knows that such distress is certain, or substantially certain, to result from [the actor's] conduct."  *McGanty v. Staudenraus*, 321 Or. 532, 550 (1995).  The tort of IIED is further distinguished from other intentional torts in that an IIED claim seeks to redress the intentional infliction of severe emotional distress.  *Id.*

For these reasons, the tort of IIED is rare, arises only in extreme cases, and is not intended to supplant other intentional torts.  *See Melton v. Allen*, 282 Or. 731, 736 (1978) ("[I]n each instance in which we have allowed redress for mental disturbance without accompanying physical injury, it has been a case involving intentional acts of a flagrant character under most unusual facts and circumstances . . . ."); *Overbay v. Ledridge*, 98 Or. App. 148, 151 (1989) ("[I]t would be a rare case in which the bringing of a lawsuit would fit the definition of outrageous conduct.").  In determining whether intentional tortious conduct crosses into the realm of actionable outrageous, socially intolerable conduct – beyond other intentional tortious conduct – as a matter of law, the Court must examine the specific conduct at issue.  *Delaney v. Clifton*, 180 Or. App. 119, 129 (2002).

Plaintiff ignores these fundamental aspects of the tort of intentional infliction of emotional distress and fails to plead a viable IIED claim.  First, he alleges that he was subjected not only to specific encounters with law enforcement on July 11, 17, and 22, 2020, but also seeks to advance his IIED claim on a vague allegation that he was subjected to "violence" – offered with no specificity as to what "violence" he faced – during a four-month period in 2020 when he repeatedly attended the Portland protests.  ECF No. 39 ¶ 7.  It is unclear whether Plaintiff still stands by this vague allegation as a basis of his IIED claim.  ECF No. 46 at 10 (referring only to incidents on July 17 and 22, 2020).  To the extent Plaintiff does, this Court should conclude that this allegation is so vague and generalized that it is insufficient to support his IIED claim.

Second, Plaintiff seeks to sustain an IIED claim through broad allegations that he was "targeted" as a journalist as part of a "pattern of targeted violence against journalists that was directed, supported, and/or enabled by" by federal officeholders and law enforcement officers. ECF No. 46 at 9. However, nowhere does Plaintiff allege that the specific federal law enforcement officers he encountered on July 11, 17, or 22, 2020, intended to target Plaintiff because he was a journalist. Indeed, the allegation that tear gas was used to "clear an area" belies any intent to target Plaintiff. Instead, Plaintiffs' Complaint relies on a few allegations of alleged "targeting" – such as general statements by former President Trump about the media and the involvement of two journalists in an unrelated protest – that are far too attenuated from the incidents that allegedly injured Plaintiff to support his assertions that he was targeted because he was a journalist, and that such conduct was outrageous.[5]

Moreover, Plaintiff appears to now argue that the alleged tortious conduct amounts to socially intolerable, outrageous conduct because it was conduct by law enforcement officers. *See* ECF No. 46 at 14 (arguing that status as a law enforcement officer may make unlawful conduct intolerable). This argument has two flaws: (1) it mischaracterizes the allegations of the First Amended Complaint, which tie the outrageousness of the conduct to the alleged targeting of journalists, and not to the status of the alleged tortfeasors as law enforcement officers; and (2)

_____

[5] Plaintiff alleges that the targeting of journalists was animated by statements by then-President Trump, in unidentified social media posts broadly characterized by Plaintiff as "attacks on the media," FAC ¶ 32, and in posts at a rally two years before the incidents in Portland, *id.* ¶ 33(a), and at a rally *after* the alleged conduct at issue in this case. *Id.* ¶ 33(b). Plaintiff does not allege that any official of the United States issued directives to law enforcement to "target" journalists or make any effort to connect these statements (some of which came later) to tortious conduct purportedly directed against Plaintiff. Plaintiff also alleges that *after* his encounters with law enforcement agents on July 17 and 22, 2020, a district court order was issued on July 23, 2020, that limited certain law enforcement activities against journalists unless certain steps were first taken. But neither that order nor DHS's alleged response to it, *id.* ¶¶ 38-39, has any bearing on the alleged tortious conduct that occurred before the order was issued.

Plaintiff is incorrect that the alleged tortious conduct rises to the level of socially intolerable, outrageous conduct merely because it involves law enforcement officers. In Oregon, whether alleged intentional tortious conduct amounts to an outrageous transgression necessary for an IIED claim "is a fact-specific inquiry, to be considered on a case-by-case basis, based on the totality of the circumstances." *Terhune v. City of Salem*, No. 6:11-CV-6049-AA, 2013 WL 1363020, at *3 (D. Or. Apr. 1, 2013). And Oregon courts are clear that law enforcement officers "are privileged to use force to effect an arrest when reasonably necessary," that "such conduct is not outrageous," and that "due consideration should be given [by courts] to the extraordinary demands of day-to-day police work." *Id.* at *4.

Third, Plaintiff has not alleged sufficient facts to support his claim that he suffered severe emotional distress by the alleged actions of the federal law enforcement officers he encountered. As the United States highlighted in its motion to dismiss, bare conclusory statements by Plaintiff that he suffered severe emotional distress are insufficient to sustain a claim for IIED. ECF No. 39 at 17 (citing *Brown v. Lane Cnty.*, No. 6:21-CV-01866-AA, 2023 WL 2140102, at *5 (D. Or. Feb. 21, 2023)). In the Complaint's Third Claim of Relief for IIED, Plaintiff sets forth only the conclusory statement that he suffered severe emotional distress. ECF No. 39 ¶ 51. But the Complaint is bereft of any factual allegations supporting this claim. The Complaint's bare allegation is nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" that is insufficient to sustain a claim of injury under Oregon law. *Carranza v. United States*, No. 3:12-CV-02255-AC, 2013 WL 3333104, at *3 (D. Or. July 1, 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court should dismiss the IIED claim.

   D.    <u>Plaintiff admits the alleged conduct at issue is intentional, which cannot support
         claims for negligence or NIED.</u>

   The Court should dismiss Plaintiff's negligence and NIED claims to the extent they are

based on allegations of intentional tortious conduct rather than negligence.  As discussed above

in the context of the discretionary function exception, *see supra* at Sec. I, Plaintiff alleges that

federal law enforcement officers falsely arrested and battered him, which are intentional torts.

*See Fossen v. Clackamas Cnty*., 271 Or. App. 842, 846 (2015) (false arrest is an intentional tort)*;*

*Doe 1 v. Lake Oswego Sch. Dist.,* 353 Or. 321, 328 (2013) (battery is an intentional tort).  In

response to the United States' motion to dismiss, Plaintiff repeatedly admits that the conduct he

alleges in the Complaint is intentional conduct.  *See* ECF No. 46 at 7-8, 17.  Plaintiff cannot

allege intentionally tortious conduct and assert a claim for negligence or NIED based on the

alleged intentional conduct.  There is no such thing as a negligent battery or a negligent false

arrest.  *See Kasnick v. Cooke*, 116 Or. App. 580, 583 (1992) ("[P]laintiff may not allege facts

that necessarily would constitute an intentional tort but then assert that he can prevail by proving

only negligence.").  Accordingly, these claims should be dismissed.

<u>**CONCLUSION**</u>

   For the reasons explained above, while Plaintiff has conceded that the negligent

supervision claim should be dismissed, the Court also should dismiss Plaintiff's negligence, and

NIED claims, which fall within the discretionary function exception of the FTCA, for lack of

subject matter jurisdiction under Rule 12(b)(1).  The Court should also dismiss Plaintiff's false

arrest, battery, IIED, negligence, and NIED claims for failure to state a claim under Oregon law

in accordance with Rule 12(b)(6).

Dated: January 16, 2024                     Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General
                                            Civil Division

                                            JAMES G. TOUHEY, Jr.
                                            Director, Torts Branch

                                            *s/ Theodore W. Atkinson*
                                            THEODORE W. ATKINSON
                                            (D.C. Bar No. 458963)
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Torts Branch
                                            P.O. Box 888, Benjamin Franklin Station
                                            Washington, D.C., 20044
                                            Theodore.Atkinson@usdoj.gov
                                            Tel: (202) 616-4266
                                            *Attorneys for Defendant United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2024, the foregoing was filed electronically through ECF/CM.

*s/ Theodore W. Atkinson*
THEODORE W. ATKINSON