IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RIAN DUNDON**, <br><br>    Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br>    Defendant. | Case No. 3:22-cv-594-SI <br><br> **OPINION AND ORDER** |

Nicholas A. Kahl, NICK KAHL, LLC, 209 SW Oak Street, Suite 400, Portland, OR 97204; and Nadia H. Dahab, SUGERMAN DAHAB, 101 SW Main Street, Suite 910, Portland, OR 97204. Of Attorneys for Plaintiff.

Brian M. Boynton, Principal Deputy Assistant Attorney General; James G. Touhey, Director, Torts Branch; and Theodore W. Atkinson, Trial Attorney, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, TORTS BRANCH, P.O. Box 888, Benjamin Franklin Station, Washington, DC 20044. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Rian Dundon is a journalist who from June 2020 to November 2020 was on assignment as a reporter for the Economic Hardship Reporting Project, working on stories for *The Atlantic*, *The New Yorker*, *Al Jazeera*, *The Nation*, and the *Washington Post*. In that role, he covered protests in Portland, Oregon. Plaintiff originally brought suit against federal law enforcement supervisory officials Gabriel Russell, Allen Jones, Russel Burger, and Andrew

Smith, 70 "John Doe" law enforcement supervisory officers, and 30 "John Doe" law enforcement non-supervisory officers, alleging claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of his First, Fourth, and Fifth Amendment rights. The Court granted Defendants' motions to dismiss, and Plaintiff filed a First Amended Complaint ("FAC"). He now brings this case only against the United States of America. Plaintiff alleges claims under the Federal Tort Claims Act ("FTCA") for false arrest, battery, intentional infliction of severe emotional distress ("IIED"), negligence, and negligent infliction of emotional distress ("NIED"). Defendant moves to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the reasons explained below, the Court grants in part and denies in part Defendant's motion.

## STANDARDS

### A. Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure

"Federal courts are courts of limited jurisdiction . . . ." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also*

*Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial or factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039).

Defendant brings a facial challenge to the Court's subject matter jurisdiction. For facial attacks, the Court resolves the Rule 12(b)(1) motion "as it would a motion to dismiss under Rule 12(b)(6)." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Thus, in "determin[ing] whether the [plaintiff's] allegations are sufficient as a legal matter to invoke the court's jurisdiction," the Court "[a]ccept[s] the plaintiff's allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." *Id*.

**B. Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the Court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th

Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Between June and November 2020, Plaintiff was on assignment as a journalist covering the Black Lives Matter protests in Portland. Federal law enforcement agents were deployed in response to these protests.

Throughout his assignment, Plaintiff identified himself as a member of the press and positioned himself with other journalists, generally separated from protestors. Nevertheless, Plaintiff alleges that federal officers physically assaulted him throughout his assignment, and he

identifies four specific instances of these assaults: (1) on July 11, 2020, when officers used tear gas to clear Plaintiff and other journalists from the area, FAC ¶ 29; (2) on July 17, 2020, when a DHS agent fired several rounds of pepper balls that hit the fence and sidewalk near Plaintiff's feet, *id.* ¶¶ 15-16; (3) on July 22, 2020, when federal officers grabbed Plaintiff and threw him to the ground, where he landed on a gas canister that exploded underneath him, *id.* ¶ 19; and (4) also on July 22, 2020, when officers again threw and pinned Plaintiff to the ground after he attempted to flee, *id.*

## DISCUSSION

### A. FTCA Discretionary Function Exception

Defendant argues that Plaintiff's negligence and NIED claims are barred by the discretionary function exception to the FTCA. Plaintiff responds that the discretionary function exception does not apply when the government has violated a legal mandate,[1] including a constitutional mandate, and that Plaintiff alleges governmental conduct that violated Plaintiff's First Amendment and Fourth Amendment rights.

The FTCA provides a limited waiver of the federal government's sovereign immunity from damages liability for torts committed by federal employees acting within the scope of their employment. *See* 28 U.S.C. §§ 1346(b), 2674. The FTCA expressly retains immunity from some

---

[1] In Plaintiff's response to the motion to dismiss, he contends that Defendant violated the legal mandate set forth in 40 U.S.C. § 1315 and corresponding regulations, and therefore the discretionary function exception does not apply. Plaintiff, however, did not allege this legal mandate in his FAC, and thus the Court will not consider it. *See Cloud Found. v. Haaland*, 2024 WL 1991552, at *7 n.4 (D. Or. Apr. 12, 2024) ("A plaintiff may not effectively amend his Complaint by raising a new theory in his response to a dispositive motion." (cleaned up)) (quoting *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010)). Plaintiff, however, requested leave to amend if the Court declined to accept his new argument raised only through briefing. The Court grants Plaintiff leave to amend to include this allegation as further grounds supporting his negligence and NIED claims.

tort liability through a number of statutory exceptions. *Id.* § 2680. If one of those exceptions applies, a court lacks subject-matter jurisdiction to hear a claim. *See Simmons v. Himmelreich*, 578 U.S. 621, 626 (2016) ("[D]istrict courts do not have jurisdiction over claims that fall into one of the 13 categories of 'Exceptions' . . . .").

The discretionary function exception provides that the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (cleaned up).

Constitutional torts are not cognizable under the FTCA. *See FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994). Nevertheless, as explained by the D.C. Circuit, that does not preclude a plaintiff from arguing that the United States may not assert the FTCA's discretionary function exception to jurisdiction over a *state tort* when the plaintiff argues that the conduct giving rise to the tort was egregious enough to be to a constitutional violation.

> The discretionary-function exception likewise does not shield decisions that exceed constitutional bounds, even if such decisions are imbued with policy considerations. *See Medina*, 259 F.3d at 225 (acknowledging, in reliance on *Berkovitz*, 486 U.S. at 536, and *Red Lake*, 800 F.2d at 1196, that federal officials lack discretion to violate constitutional rights). A constitutional limit on governmental power, no less than a federal statutory or regulatory one like the FBI policy in *Red Lake*, circumscribes the government's authority even on decisions that otherwise would fall within its lawful discretion. The government "has no 'discretion' to violate the Federal Constitution; its dictates are absolute and imperative." *Owen v. City of Independence, Mo.*, 445 U.S. 622, 649 (1980). Indeed, the absence of a limitation on the discretionary-function exception for constitutionally ultra vires

> conduct would yield an illogical result: the FTCA would authorize tort claims against the government for conduct that violates the mandates of a statute, rule, or policy, while insulating the government from claims alleging on-duty conduct so egregious that it violates the more fundamental requirements of the Constitution.

*Loumiet v. United States*, 828 F.3d 935, 944-45 (D.C. Cir. 2016).

The D.C. Circuit described its holding and those of other circuits, including the Ninth Circuit:

> We hold that the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription. At least seven circuits, including the First, Second, Third, Fourth, Fifth, Eighth, and Ninth, have either held or stated in dictum that the discretionary-function exception does not shield government officials from FTCA liability when they exceed the scope of their constitutional authority. In *Nurse v. United States*, for example, the Ninth Circuit held that "in general, governmental conduct cannot be discretionary if it violates a legal mandate," including a constitutional mandate. 226 F.3d 996, 1002 (9th Cir. 2000). The discretionary-function exception was inapplicable, that court explained, because the plaintiff had alleged tort claims based on "discriminatory, unconstitutional policies which the defendants had no discretion to create." *Id*. Likewise, the Eighth Circuit in *Raz v. United States* held that the FBI's "alleged surveillance activities fell outside the FTCA's discretionary-function exception" where the plaintiff had "alleged they were conducted in violation of his First and Fourth Amendment rights." 343 F.3d 945, 948 (8th Cir. 2003); *see also, e.g.*, *Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009) (holding that challenged "conduct was unconstitutional and, therefore, not within the sweep of the discretionary function exception"); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) (In "determining the bounds of the discretionary function exception we begin with the principle that federal officials do not possess discretion to violate constitutional rights or federal statutes." (internal quotation marks, alterations, and citations omitted)); *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988) ("Conduct cannot be discretionary if it violates the Constitution, a statute, or an applicable regulation. Federal officials do not possess discretion to violate constitutional rights or federal statutes."); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987) ("Action does not fall within the discretionary function exception of § 2680(a) when

> governmental agents exceed the scope of their authority as designated by statute or the Constitution."); *Myers & Myers Inc. v. USPS*, 527 F.2d 1252, 1261 (2d Cir. 1975) ("It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority.").

*Id.* at 943 (cleaned up).

Defendant argues that even if a constitutional violation may provide an exception to the discretionary exception, mere negligence cannot support a constitutional violation. But Plaintiff asserts negligence claims against Defendant for failure to train, and a negligent failure to train can form the basis for a constitutional violation in limited circumstances.[2]

The Ninth Circuit has recognized that "the inadequacy of police training may serve as a basis for liability under section 1983 or *Bivens* 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).[3] The failure to train must "likely . . . result in the violation of constitutional rights." *Id.* (quoting *City of Canton*, 489 U.S. at 390). The Court sees no reason why this same analysis for the narrow circumstances in which a failure to train claim might rise to the level of a constitutional violation would not apply when a plaintiff alleges a claim under the FTCA.

---

[2] Defendant also argues that Plaintiff only asserts that *intentional* conduct by federal officers violated his constitutional rights, and such intentional conduct cannot form the basis for a negligence claim. As discussed, however, Plaintiff alleges that Defendant was negligent in failing to train the officers who engaged in the underlying intentional conduct, not that Defendant engaged in intentional conduct.

[3] This holding is based on the Supreme Court's finding that, although more limited in some respects, a claim under *Bivens* is the federal analog to a § 1983 claim. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006).

Although the Ninth Circuit held in *Nurse* that the United States could not be held liable under a negligent training theory for alleged constitutional violations by customs officers, this case is readily distinguishable. The Ninth Circuit did not consider whether there could be a deliberate indifference exception such as applies in *Bivens* and § 1983 claims. Further, the customs officers in *Nurse* were engaged in their routine employment, with no extraordinary circumstances supporting deliberate indifference. The facts alleged by Plaintiff, on the other hand, are in the context of months of protests, with Defendant allegedly deploying heavily armed tactical officers with inadequate training and experience to respond to domestic protests. Plaintiff alleges repeated violence by federal officers targeting journalists, and specific violence directed against him as a journalist. Plaintiff alleges that when he attempted to photograph the protests, a federal officer "trained his weapon on Plaintiff and fired several rounds of pepper balls" at Plaintiff. FAC ¶ 15. Moreover, Plaintiff alleges that he was standing with a group of journalists, separate from the protestors, and was wearing a badge marked "PRESS" when federal officers grabbed Plaintiff and threw him to the ground, and that he was intentionally targeted because he was a journalist. *Id.* ¶¶ 19, 28. This violence occurred despite the Court entering a temporary restraining order to protect journalists and a preliminary injunction to protect journalists after the Court found that federal officers violated the temporary restraining order.

At this stage of the litigation, these allegations suffice to show deliberate indifference to the rights of journalists with whom the federal officers came into contact that likely would result in a violation of their constitutional rights. Taking all of Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff sufficiently alleges a failure to train claim that may rise to the level of a constitutional violation, which would remove the applicability of the discretionary function exception.

### B. False Arrest

Under Oregon law, false arrest requires: "(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Denucci v. Henningsen*, 248 Or. App. 59, 67 (2012) (quoting *Hiber v. Creditors Coll. Serv.*, 154 Or. App. 408, 413 (1998)). The defendant need "only intend to accomplish the act that causes confinement; they need not intend the confinement to be unlawful." *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1479 (9th Cir. 1992). The gravamen of a false arrest claim is "the unlawful imposition of restraint on another's freedom of movement." *Buckel v. Nunn*, 133 Or. App. 399, 405 (1995) (quoting *Walker v. City of Portland*, 71 Or. App. 693, 697 (1985)).

Plaintiff argues that three acts by federal officers constitute false arrest. First, Plaintiff alleges that a federal officer fired pepper balls at Plaintiff, causing him injury. FAC ¶¶ 15-16. Second, Plaintiff alleges that federal officers grabbed him and threw him to the ground. *Id.* ¶ 19(b). Third, Plaintiff alleges that after Plaintiff stood and tried to flee, officers again threw him to the ground and pinned him there. *Id.* ¶ 19(e)-(f). Defendant argues that firing pepper balls at Plaintiff did not constitute confinement but does not dispute that Plaintiff was confined when officers threw him to the ground.

The Court agrees that Plaintiff has not sufficiently alleged that he was confined when the officers fired pepper balls at him. This action did not restrict his freedom of movement. Being thrown and pinned to the ground, however, restrained Plaintiff's movement and constitutes confinement.

Defendant further argues that Plaintiff failed to demonstrate that the officers intended to confine him. But under Oregon law, a plaintiff does not need to establish that a defendant intended the *confinement*; rather, the defendant must intend the *act* that caused the confinement.

PAGE 10 – OPINION AND ORDER

*Denucci*, 248 Or. App. at 67. Plaintiff has sufficiently alleged that the officers intended to grab him and throw him to the ground.

Plaintiff also alleges that he was aware of his confinement; he was aware that he was pinned to the ground. Finally, Plaintiff alleges, and Defendant does not dispute, that the confinement was unlawful. Plaintiff alleges that he was acting lawfully when he was grabbed, and Defendant does not argue that there were any circumstances that would make Plaintiff's confinement lawful. Thus, the Court finds that Plaintiff has sufficiently alleged a claim for false arrest based on the two instances on July 22, 2020, when federal officers grabbed him and threw or pinned him to the ground.

## C. Battery

To establish liability for battery under Oregon law, "the conduct which brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof." *Bakker v. Baza'r, Inc.*, 275 Or. 245, 249 (1976). The contact need not "do actual physical harm—it is sufficient if the contact is offensive or insulting." *Id.* The actor also does not need to directly contact the other party; "force as is applied through some intervening agency, but of which defendant is, nevertheless, the proximate cause" can support a claim for battery. *Denton v. Arnstein*, 197 Or. 28, 45 (1952).

Plaintiff argues that he has alleged at least four instances constituting battery: (1) when federal officers used tear gas to clear him and other journalists from an area; (2) when federal officers shot Plaintiff with pepper balls, which exploded on the ground in front of him and contacted him; (3) when federal officers grabbed Plaintiff and threw him on the ground; and (4) when federal officers again grabbed Plaintiff and pinned him to the ground. Defendant argues that Plaintiff's battery claims based on the use of tear gas and pepper balls fail to allege any

PAGE 11 – OPINION AND ORDER

harmful or offensive contact caused by a federal officer. Defendant does dispute that the allegations of officers throwing Plaintiff to the ground constitute battery.

The Court finds that Plaintiff fails to allege any harmful or offensive contact resulting from federal officers' use of tear gas. Plaintiff does not allege the gas contacted him or put him in apprehension of any contact. The Court thus dismisses Plaintiff's battery claim premised on the officers' use of tear gas with leave to amend.

Plaintiff also alleges that an officer intentionally shot pepper balls at Plaintiff. FAC ¶ 15 ("[A] DHS agent trained his weapon on Plaintiff and fired several rounds of pepper balls, striking the fence and sidewalk near his feet."). Shooting pepper balls at someone is generally done with the intention to cause a harmful or offensive contact. Viewing the facts in the light most favorable to Plaintiff, he has alleged intent by the officer. Plaintiff, however, does not allege that he suffered any specific harmful or offensive contact, but merely alleges that the powder released into the air when the pepper balls hit the fence and sidewalk caused him "injury." FAC ¶ 16. Such a conclusory allegation devoid of factual support is insufficient to establish that Plaintiff suffered a harmful or offensive contact. Nor does he allege that he was apprehensive of offensive or harmful contact when the officer shot the pepper balls toward Plaintiff. Thus, the Court dismisses Plaintiff's battery claim premised on being shot at by pepper balls with leave to amend.

The Court finds that Plaintiff has sufficiently alleged battery regarding the two instances in which federal officers threw Plaintiff to the ground. This contact is clearly harmful and offensive to Plaintiff, and he alleges that the officers intended to bring about harmful or offensive conduct. Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's battery claims premised on these instances.

### D. IIED

Under Oregon law, a plaintiff asserting a claim for IIED must plead: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995) (quotation marks omitted). To survive a motion to dismiss, it is sufficient that a plaintiff alleges either that the defendant "desired to inflict severe emotional distress [or] that the defendant knew that such distress was substantially certain to result from a volitional act." *Babick v. Or. Arena Corp.*, 333 Or. 401, 412 (2002).

Defendant argues that Plaintiff has presented only conclusory allegations that he suffered severe emotional distress. Plaintiff responds that he has alleged that he "suffered physical injury, mental and emotional suffering, anguish, outrage, betrayal, offense, indignity, and insult," FAC ¶ 51, and that these allegations suffice to state a claim under Oregon law, citing *Carranza v. United States*, 2013 WL 3333104, at *10 (D. Or. July 1, 2013). In *Carranza*, however, the plaintiff alleged that she "recalled working on the streets as child and being sexually assaulted," and feared what would happen to her daughters if the defendants carried through on their threats to take them away from the plaintiff. These allegations of emotional distress are much more detailed than the allegations Plaintiff has presented here. The Court therefore finds that Plaintiff's allegations of emotional distress are conclusory. *See Jones v. Dollar Tree Stores, Inc.*, 2021 WL 6496822, at *6 (C.D. Cal. Nov. 4, 2021) (holding that allegations of "extreme emotional and physical distress" were conclusory). Thus, Plaintiff's claim for IIED, as currently pleaded, is insufficient, and the Court grants Plaintiff leave to amend to allege more factual allegations supporting his claim of severe emotional distress.

### E. Negligence

Common law negligence under Oregon law requires:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Solberg v. Johnson*, 306 Or. 484, 490-91 (1988), *abrogated on other grounds by Deckard v. Bunch*, 358 Or. 754 (2016). A plaintiff can allege a claim against an employer for negligence in hiring, instructing, or supervising. *See Vaughn v. First Transit, Inc.*, 346 Or. 128, 138 n.7 ("[A] principal may be directly liable for the tortious act of an agent if . . . the principal itself was negligent in hiring, instructing, or supervising the agent.").

Defendant argues that Plaintiff's claim for negligence is based on intentional conduct and thus must be dismissed. Plaintiff, however, alleges that Defendant was negligent in training the federal officers deployed to Portland.[4] Plaintiff alleges that Defendant's failure to train created a foreseeable risk of harm in that untrained officers involved in major protests could likely injure protestors or bystanders. Plaintiff also alleges causation; he alleges that if Defendant had properly trained its agents, "the harm that befell Plaintiff could have been prevented." FAC ¶ 53. It is plausible that properly trained officers would have acted differently and may not have engaged in the behavior that Plaintiff alleges caused him harm. The Court thus finds that Plaintiff has adequately pleaded a negligence claim against Defendant.

---

[4] Plaintiff agreed in his response to dismiss his negligent supervision claim.

PAGE 14 – OPINION AND ORDER

### F. NIED

Defendant cites Oregon's "physical impact rule" and argues that the conduct alleged by Plaintiff does not fit within any of the exceptions. Under Oregon's physical impact rule, "a plaintiff who has suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact." *I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 254 (2022) (citing *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 558-61 (1982)). Oregon courts have not "define[d] the minimum amount of bodily harm necessary to constitute a physical impact," but "[a]t a minimum, the physical impact rule requires an act or omission that results in some perceptible physical effect on a plaintiff." *Chouinard v. Health Ventures*, 179 Or. App. 507, 514-15 (2002). A claim for NIED can proceed when the plaintiff suffers no physical impact when (1) the defendant violated a "legally protected interest" independent of the negligent conduct, *I.K.*, 317 Or. App. at 254; (2) the defendant is subject to a "standard of care that includes a specific duty to be aware of and guard against particular adverse psychological reactions," typically in the medical profession, *Curtis v. MRI Imaging Servs. II*, 327 Or. 9, 15 (1998); or (3) the plaintiff is a bystander who contemporaneously witnessed the negligent death of or injury to a family member, *Philibert v. Kluser*, 360 Or. 698, 712-16 (2016) (applying the Restatement (Third) of Torts standard).

Defendant does not address whether Plaintiff has suffered a physical impact, and instead argues that Plaintiff does not fall within any of these exceptions and, even if he did, he has not sufficiently alleged that he suffered emotional distress. Plaintiff responds that he suffered physical injuries and has met the ordinary negligence standard that therefore applies.

The Court agrees Plaintiff sufficiently alleges a physical impact; he was thrown and pinned to the ground by federal officers, an act that clearly "results in some perceptible physical

PAGE 15 – OPINION AND ORDER

effect." *Chouinard*, 179 Or. App. at 515. As discussed, however, Plaintiff has not sufficiently alleged that that he suffered emotional distress. The Court therefore dismisses this claim and grants Plaintiff leave to amend to allege more factual allegations supporting his claim of emotional distress.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss, ECF 39. The Court dismisses Plaintiff's false arrest claim based on being shot at with pepper balls, battery claim based on being shot at with pepper balls and tear gas canisters, IIED claim, negligent supervision claim, and NIED claim. These claims are dismissed with leave to amend. Plaintiff also has leave to amend to add assertions relating to the federal officers' legal mandates (whether constitutional, statutory, or regulatory). The Court declines to dismiss Plaintiffs' remaining claims.

**IT IS SO ORDERED**.

DATED this 2nd day of December, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge