**Nicholas A Kahl**, OSB No. 101145
NICK KAHL, LLC
209 SW Oak Street Suite 400
Portland, OR 97204
Telephone: (971) 634-0829
nick@nickkahl.com

**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main St. Ste. 910
Portland, OR  97204
Telephone: (503) 228-6474
nadia@sugermandahab.com

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| RIAN DUNDON,<br><br>           Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>           Defendant. | Case No.: 3:22-cv-00594-SI<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff alleges the following:

**INTRODUCTION**

1.

On May 25th, 2020, a Black man named George Floyd was murdered by a police officer in Minneapolis, Minnesota.

2.

Within days of George Floyd's murder, people gathered in cities all across America, including in Portland, Oregon, to protest George Floyd's murder and decry systemic racism in support of the Black Lives Matter ("BLM").

3.

On June 26th, 2020, President Donald J. Trump issued Executive Order 13933, "On Protecting American Monuments, Memorials, and Statues and Combatting Recent Criminal Violence," deploying federal agents to Portland. President Trump directed Chad Wolf, the person performing the duties of the Acting Secretary of Homeland Security, to provide "personnel to assist with the protection of Federal monuments, memorials, statues, or property."[1] Wolf immediately took steps to implement the President's Executive Order, through a coordinated effort between DHS, FPS, CBP, ICE, and several other federal agencies.

4.

Following the deployment, federal agents in military fatigues began using violence and chemical munitions, including the use of tear gas, against journalists who were exercising their rights under the First Amendment of the U.S. Constitution to report on the protests and the government's response thereto.

---

[1]    Exec. Order No. 13933, 85 Fed. Reg. 40,081, 40,083 (June 26, 2020).

PAGE 2 – SECOND AMENDED COMPLAINT

5.

Plaintiff was one of the journalists covering the Portland protests.

6.

From June 2, 2020, to November 3, 2020, Plaintiff was working on assignment for the Economic Hardship Reporting Project (EHRP), producing documentary photographs of protests and political rallies leading up to the 2020 presidential election.  EHRP is a nonprofit that partners with various publications to produce original reporting.  During that time, Plaintiff worked for EHRP on stories for The Atlantic, The New Yorker, Al Jazeera, The Nation, and Washington Post.

7.

Beginning on July 6, 2020, through the end of his assignment on November 3, 2020, Plaintiff, in addition to other members of the press, was subjected to escalating acts of violence directed at him by federal officers and agents.

8.

The violence directed at Plaintiff was not collateral to other crowd-control measures deployed by federal officers and agents; instead, it was directed at Plaintiff because he was a journalist.

***On July 17, 2020, a DHS officer assaults Plaintiff.***

9.

On July 17, 2020, Plaintiff was standing alone on the south sidewalk of SW Madison between 3rd and 4th Avenues in downtown Portland.  The nearest group of protesters was half a block to the east, outside the Edith Green–Wendell Wyatt Federal Building on 3rd and Madison.

PAGE 3 – SECOND AMENDED COMPLAINT

10.

Plaintiff became aware of several federal officers positioned among the shrubbery around Terry Schrunk Plaza.

11.

Plaintiff approached the area so that he could take a picture through the chain-link fence separating the sidewalk from the park.

12.

Plaintiff was roughly 10 yards from the federal officers and separated from them by a chain link fence.

13.

Plaintiff posed no threat to the federal officers.

14.

Plaintiff was not, and could not have been perceived to be, part of the protests or engaged in any protest activities.

15.

When he raised his camera to photograph the scene, a DHS agent trained his weapon on Plaintiff and fired several rounds of pepper balls, striking the fence and sidewalk near his feet. The photograph below shows the DHS agent who fired at Plaintiff.

PAGE 4 – SECOND AMENDED COMPLAINT



16.

The pepper balls exploded on contact and released a powder into the air.  The pepper balls caused Plaintiff apprehension of direct and offensive physical contact, came in direct contact with Plaintiff, and ultimately caused him injury, including as a result of inhalation of the chemical dust emitting from the pepper balls.

### *On July 22, 2020, USMS Officers assaulted Plaintiff.*

17.

On July 22, 2020, federal agents violently assaulted Plaintiff.

18.

Prior to the assault, Plaintiff was standing lawfully on the sidewalk outside of the Mark O. Hatfield Federal Courthouse ("the Hatfield Courthouse") taking pictures of a fire that had been started in front of the courthouse:

PAGE 5 – SECOND AMENDED COMPLAINT



19.

Video and photographs of the July 22, 2020 incident show:

(a)    Plaintiff was standing with a group of other journalists, in an area separate from the protestors, and who were also photographing the fire. Plaintiff was wearing a "PRESS" badge around his neck and dressed conspicuously in a bright blue jacket:

PAGE 6 – SECOND AMENDED COMPLAINT



(b)    Federal officers dressed in military fatigues and wearing gas masks approached

from behind Plaintiff and the other journalists; Plaintiff turned to run, but federal officers

grabbed him and threw him to the ground:



(c)    When federal officers threw Plaintiff to the ground, he landed on a live,

PAGE 7 – SECOND AMENDED COMPLAINT

unexploded gas canister:



     (d)     The gas canister then exploded underneath of Plaintiff:



     (e)     Plaintiff stood and again tried to flee, but federal officers again threw him to the

ground:

PAGE 8 – SECOND AMENDED COMPLAINT



(f)      Federal officers then pinned Plaintiff on the ground:



(g)      The insignia on the uniform of the officer who pinned Plaintiff on the ground

PAGE 9 – SECOND AMENDED COMPLAINT

identifies the officer as a member of the USMS Special Operations Group:

 

## JURISDICTION

20.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

21.

As of the date of this filing, Plaintiff has mailed a tort claim notice to the claims administrators for the relevant agencies for this matter. 28 U.S.C. § 2401(b). Plaintiff has not received a response from the claims administrators. 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(c). Plaintiff has therefore received a constructive denial of those claims.

22.

Venue is proper under 28 U.S.C. § 1391(b), because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Oregon, and because Defendant is subject to personal jurisdiction in the District of Oregon.

PAGE 10 – SECOND AMENDED COMPLAINT

**PARTIES**

23.

At all times material hereto, Plaintiff Rian Dundon ("Plaintiff") was a journalist working on assignment for EHRP covering the protests taking place outside of the Mark O. Hatfield Federal Courthouse in downtown Portland.

24.

Defendant United States of America is a sovereign nation that has waived sovereign immunity in certain circumstances pursuant to the Federal Tort Claims Act ("FTCA"). Defendant United States retains control over the Department of Homeland Security and is answerable to the tortious actions of its agents. The agents at issue in this case were law enforcement officers as defined in 28 U.S.C. § 2680(h).

25.

At all material times, "Operation Diligent Valor" was a coordinated effort involving personnel from the Department of Homeland Security (DHS) and the Department of Justice (DOJ). At all material times, all personnel from DHS and DOJ were agents of Defendant United States.

26.

As part of Operation Diligent Valor, DHS deployed the Federal Protective Service (FPS), U.S. Immigration and Customs Enforcement (ICE), and U.S. Customs and Border Protection (CBP). At all material times, all personnel acting on behalf of the FPS, ICE, and CBP were agents of Defendant United States.

27.

As part of Operation Diligent Valor, DOJ deployed the United States Marshals Services (USMS). At all material times, all personnel acting on behalf of the USMS were agents of

PAGE 11 – SECOND AMENDED COMPLAINT

Defendant United States.

## FACTUAL ALLEGATIONS

### *Federal agents intentionally targeted Plaintiff because he was a journalist.*

28.

At all times material, Plaintiff lawfully covered, as a member of the press, the protests at which he was targeted. For instance, he made himself conspicuously present as a member of the press, including by:

(a)    wearing a badge on lanyard around his neck that identified him as a member of the "PRESS" in large black letters;

(b)    carrying a camera;

(c)    congregating with other journalists in a group separate from the crowd of protestors;

(d)    When not with other journalists, separating himself from the crowd of protestors;

(e)    staying on the sidewalk and always moving in compliance with law enforcement directives; and

(f)    dressing in light colored clothing to distinguish himself from black-clad demonstrators.

29.

Plaintiff and other journalists often congregated in a group on the sidewalk in front of the Hatfield Courthouse. Indeed, on July 11, 2020, federal agents used tear gas to clear Plaintiff and other journalists from the very location at which federal agents attacked Plaintiff on July 22, 2020. The tear gas came into direct contact with Plaintiff:

PAGE 12 – SECOND AMENDED COMPLAINT



30.

At all material times, agents of the United States failed to ascertain or ignored all reasonable and objective facts, and their acts and omissions were objectively unreasonable in light of the circumstances confronting them for reasons which, based on information presently known to Plaintiff, include the following:

(a)     They gave no or inadequate warning of their intention to use force, even though it was reasonably feasible for them to do so;

(b)     They gave no directions or instructions to Plaintiff as to how or in what direction to safely evacuate the area;

(c)     They lacked reasonable cause to believe that Plaintiff had committed a crime, posed a threat to the safety of federal officers or agents or others, or were resisting arrest or attempting to evade arrest by flight;

PAGE 13 – SECOND AMENDED COMPLAINT

(d)    They lacked reasonable cause to believe that Plaintiff had displayed aggression or engaged in violent conduct;

(e)    They gratuitously inflicted pain on Plaintiff in a manner that was not a reasonable response in the circumstances;

(f)    They intentionally used and applied force that was capable of causing serious and permanent injury and was grossly disproportionate to any threat presented by Plaintiff; and

(g)    They knew the weapons and munitions they were using were capable of causing serious and permanent injury, were inaccurate and unreliable at the distances from which they were deploying them, and could not be deployed without risk of hitting individuals in vulnerable areas or endangering persons, such as Plaintiff, against whom no such use of force was reasonable.

***Targeting journalists was not a quirk of the federal enforcement efforts; it was one of its objectives.***

31.

President Donald J. Trump's campaign for public office and his single presidential term were marked by his near constant attacks on the media.

32.

President Trump used Twitter as his primary outlet for his attacks on the media.[2]

33.

President Trump spoke supportively of violence against journalists at public rallies in

---

[2]    "By the time the social media platform Twitter permanently suspended his account on Jan. 8, 2021, President Donald Trump had posted 2,520 tweets degrading journalists and the media as a whole." *The Last Trump Tweet Against the Media*, January 11, 2021, *available at* https://pressfreedomtracker.us/blog/last-trump-tweet-against-media/ (last visited March 1, 2021).

PAGE 14 – SECOND AMENDED COMPLAINT

front of thousands of supporters.

     (a)     In October of 2018, President Trump publicly praised Rep. Greg Gianforte for assaulting a reporter.[3]

     (b)     In late September of 2020, at a rally for his reelection campaign, President Trump praised the violent treatment of a journalist by police stating: "'I'm a reporter, I'm a reporter, Get out of here.' They threw him aside like he was a little bag of popcorn. But honestly, when you watch the crap that we've all had to take so long when you see it * * * it's actually a beautiful sight."[4]

34.

Before the deployment of federal troops to Portland, DOJ and USMS responded to other protest activities by deploying federal agents to violently end a lawful demonstration in Washington, D.C. During that federal response, directed by the DOJ, two journalists were attacked on live television by federal agents.[5]

---

[3] Video available at https://twitter.com/axios/status/1053097692098904064?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E1053097692098904064%7Ctwgr%5E%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fwww.motherjones.com%2Fpolitics%2F2018%2F10%2Ftrump-greg-gianforte-body-slam-reporter%2F (las visited March 1, 2021).

[4] Video available at https://twitter.com/atrupar/status/1308570366839853056?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E1308570366839853056%7Ctwgr%5E%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fwww.motherjones.com%2Fpolitics%2F2020%2F09%2Ftrump-ali- velshi%2F (last visited March 1, 2021).

[5] https://www.washingtonpost.com/national-security/william-barr-george-floyd-protests- fbi-atf-us-marshals/2020/06/02/6d093d0a-a515-11ea-b473-04905b1af82b_story.html

[6] https://www.washingtonpost.com/opinions/by-deploying-police-without-badges-barr-threatens-force-without-accountability/2020/06/04/8c6b8f8a-a68d-11ea-b619-3f9133bbb482_story.html

PAGE 15 – SECOND AMENDED COMPLAINT

35.

On information and belief, Defendant United States was aware at all material times that the officers it was deploying were inadequately trained[6] and inadequately supervised and that the objective of those officers was to retaliate and/or use physical violence against journalists and protesters.

36.

As detailed above, the attack on Plaintiff was not an isolated incident.

*Federal agents were undeterred by the intervention of the federal court to protect journalists.*

37.

On July 23, 2020, the U.S. District Court in *Index Newspapers, LLC v. City of Portland*, USDC Case No. 20-cv-1035-SI, issued a temporary restraining order (TRO) exempting journalists and legal observers from orders to disperse and restraining DHS and USMS from arresting, threatening to arrest, or using physical force directed against any person who they knew or reasonably should have known was a journalist. The TRO anticipated, consistent with the U.S. Constitution and federal law, that "lawful crowd-dispersal orders" would be issued before the deployment of crowd-control devices.

38.

On or about July 23, 2020, after the entry of the TRO against federal officials involved in the July protest response, Kenneth Cuccinelli, the Senior Official performing the duties of the Deputy Secretary of DHS, sent an email to Chad Wolf saying, in reference to the TRO, "It's offensive, but shouldn't affect anything we're doing."

---

[6]     Sergio Olmos, Mike Baker and Zolan Kanno-Youngs, Federal Officers Deployed in Portland Didn't Have Proper Training, D.H.S. Memo Said, The New York Times (July 18, 2020) https://www.nytimes.com/2020/07/18/us/portland-protests.html.

PAGE 16 – SECOND AMENDED COMPLAINT

39.

Indeed, the DOJ, DHS, and federal agents did not change their behavior and continued to deploy and direct violence against journalists.

40.

On August 20, 2020, the Court in *Index Newspapers* issued a preliminary injunction finding that DHS and USMS had been targeting journalists and legal observers during the month of July 2020 with unnecessary and excessive force.  The Court found that "the character of the recent past violations by the Federal Defendants in Portland is particularly egregious" and "the Federal Defendants have not recognized the wrongful nature of their conduct but instead assert that they have only engaged in lawful conduct."[7]  The Court further observed, "given the disdainful comments publicly made by the highest officials at the Federal Defendants with respect to journalists, legal observers, Plaintiff, protesters and the City of Portland, the professional and personal characteristics of the Federal Defendants show that they are likely to be enabled or tempted to engage in future violations."[8]

41.

Through the preliminary injunction, the Court ordered, among other relief, that the defendants, "their agents and employees, and all persons acting under their direction are enjoined from arresting, threatening to arrest, or using physical force directed against any person whom they know or reasonably should know is a Journalist . . . unless the Federal Defendants have probable cause to believe that such individual has committed a crime."

---

[7]     Opinion & Order Granting Preliminary Injunction, ECF 157, at 54.
[8]     *Id.* at 55.

PAGE 17 – SECOND AMENDED COMPLAINT

**FIRST CLAIM FOR RELIEF**

*False Arrest*

42.

Plaintiff incorporates here by reference paragraphs 1 to 41.

43.

As alleged above, Defendant United States unlawfully restrained Plaintiff's freedom of movement when federal officers grabbed him and threw him to the ground (*see* ¶ 19(b)), and when, after Plaintiff stood and tried to flee, officers again threw him to the ground and pinned him there (*see* ¶ 19(e)-(f)).  Defendant's actions caused Plaintiff arrest and subsequent harm.

44.

As a direct and proximate result of Defendant's tortious conduct, Plaintiff suffered physical injury, mental and emotional suffering, anguish, outrage, betrayal, offense, indignity, and insult.  Plaintiff's mental and emotional suffering includes post-traumatic stress and anxiety relating to the injuries he suffered while he was undertaking his work as a journalist, extreme and continuing fear and anxiety for his physical safety when undertaking daily work; extreme stress relating to his inability to continue that work; depression; fear, anxiety, and distrust of law enforcement officers; and interference withclose personal relationships.  Plaintiff's physical and emotional injuries caused economic and noneconomic damage in amounts to be determined at trial.

**SECOND CLAIM FOR RELIEF**

*Battery*

45.

Plaintiff incorporates here by reference paragraphs 1 to 44.

46.

As alleged above, agents of Defendant United States did unlawfully intend to come into physical contact with Plaintiff, and did come into physical contact with Plaintiff. Defendant did so

(1)     when federal officers used tear gas to clear Plaintiff from an area near the Hatfield Courthouse;

(2)     when federal officers shot Plaintiff with pepper balls, which exploded on the ground in front of him and directly contacted him, causing him apprehension of offense contact and physical harm, including as a result of Plaintiff's inhalation of chemical dust from the pepper balls;

(3)     when federal officers grabbed Plaintiff and threw him to the ground; and

(4)     when federal officers grabbed Plaintiff a second time and pinned him to the ground.

Such unlawful and intentional direct contacts with Plaintiff were offensive.

47.

As a direct and proximate result of Defendant's tortious conduct, Plaintiff suffered physical injury, mental and emotional suffering, anguish, outrage, betrayal, offense, indignity, and insult. Plaintiff's mental and emotional suffering includes post-traumatic stress and anxiety relating to the injuries he suffered while he was undertaking his work as a journalist, extreme and continuing fear and anxiety for his physical safety when undertaking daily work; extreme stress relating to his inability to continue that work; depression; fear, anxiety, and distrust of law enforcement officers; and interference with close personal relationships. Plaintiff's physical and emotional injuries caused economic and noneconomic damage in amounts to be determined at trial.

PAGE 19 – SECOND AMENDED COMPLAINT

## THIRD CLAIM FOR RELIEF

### *Intentional Infliction of Emotional Distress*

48.

Plaintiff incorporates here by reference paragraphs 1 to 47.

49.

As alleged above, agents and employees of Defendant United States intentionally and/or with reckless disregard inflicted severe emotional distress on Plaintiff, which also resulted in physical injury.

50.

As alleged above, the acts of agents and employees of Defendant United States constituted an extraordinary transgression of the bounds of socially tolerable conduct.

51.

As a direct and proximate result of Defendant's tortious conduct, Plaintiff suffered physical injury, mental and emotional suffering, anguish, outrage, betrayal, offense, indignity, and insult.  Plaintiff's mental and emotional suffering includes post-traumatic stress and anxiety relating to the injuries he suffered while he was undertaking his work as a journalist, extreme and continuing fear and anxiety for his physical safety when undertaking daily work; extreme stress relating to his inability to continue that work; depression; fear, anxiety, and distrust of law enforcement officers; and interference with close personal relationships.  Plaintiff's physical and emotional injuries caused economic and noneconomic damage in amounts to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### *Negligence*

52.

Plaintiff incorporates here by reference paragraphs 1 to 51.

53.

The United States also knew or in the exercise of reasonable care should have known that its agents were not appropriately trained and were engaging in repeated acts of violence against journalists, like Plaintiff. Had the United States adequately and properly trained its agents, the harm that befell Plaintiff could have been prevented. Consequently, the injuries that Plaintiff suffered were a foreseeable and direct result of the United States' failure to train.

54.

The United States' failure to train federal officers violated the legal mandate set forth under 40 U.S.C. § 1315 and its corresponding regulations, which, on Plaintiff's information and belief, require officers to complete basic law enforcement or criminal investigator training before exercising authorities under 40 U.S.C. § 1315. The guidelines also require officers to complete periodic refresher training. In engaging in the alleged negligent conduct set forth above, the United States did not comply with the statute or its regulations.

55.

As a direct and proximate result of Defendant's negligence, Plaintiff suffered physical injury, mental and emotional suffering, anguish, outrage, betrayal, offense, indignity, and insult, causing economic and noneconomic damage in amounts to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### *Negligent Infliction of Emotional Distress*

56.

Plaintiff incorporates here by reference paragraphs 1 to 55.

57.

As alleged above, agents and employees of Defendant United States negligently inflicted severe emotional distress on Plaintiff, which also resulted in physical injury.

58.

As alleged above, the acts of agents and employees of Defendant United States constituted an extraordinary transgression of the bounds of socially tolerable conduct.

59.

As a direct and proximate result of Defendant's tortious conduct, Plaintiff suffered physical injury, mental and emotional suffering, anguish, outrage, betrayal, offense, indignity, and insult.  Plaintiff's mental and emotional suffering includes post-traumatic stress and anxiety relating to the injuries he suffered while he was undertaking his work as a journalist, extreme and continuing fear and anxiety for his physical safety when undertaking daily work; extreme stress relating to his inability to continue that work; depression; fear, anxiety, and distrust of law enforcement officers; and interference with close personal relationships.  Plaintiff's physical and emotional injuries caused economic and noneconomic damage in amounts to be determined at trial.

PAGE 22 – SECOND AMENDED COMPLAINT

## JURY TRIAL DEMAND

60.

Plaintiff hereby demands a jury trial for all claims triable of right by a jury.

WHEREFORE Plaintiff prays for judgment against Defendant United States as follows:

1.      For compensatory noneconomic and economic damages in an amount to be determined by a jury and for prejudgment interest on said sums;

2.      For Plaintiff's costs and such other and further relief as the Court may deem just and equitable; and

3.      Plaintiff demands a jury trial for all matters triable of right by a jury.

RESPECTFULLY SUBMITTED this 16th day of December, 2024.

s/ Nadia H. Dahab
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main St. Ste. 910
Portland, OR  97204
Tel: (503) 228-6474
nadia@sugermandahab.com

**Nicholas A. Kahl**, OSB No. 101145
NICK KAHL, LLC
209 SW Oak Street, Suite 400
Portland, Oregon 97204
Tel: (971) 634-0829
nick@nickkahl.com

PAGE 23 – SECOND AMENDED COMPLAINT