IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RIAN DUNDON**, | Case No. 3:22-cv-594-SI |
| Plaintiff, | |
| v. | **ORDER** |
| **UNITED STATES OF AMERICA**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

Rian Dundon (Dundon) is a journalist who from June 2020 through November 2020 was on assignment in Portland, Oregon as a reporter for the Economic Hardship Reporting Project, working on stories for *The Atlantic*, *The New Yorker*, *Al Jazeera*, *The Nation*, and the *Washington Post*. In that role, he covered the protests in Portland and allegedly suffered physical injury and emotional distress caused by the wrongful conduct of federal agents in Portland acting within the course and scope of their duties. He originally brought this case against federal law enforcement officials, alleging claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and asserting violations of his First, Fourth, and Fifth Amendment rights. After the Court concluded that Dundon's *Bivens* claims were

PAGE 1 – ORDER

foreclosed under the Supreme Court's decision in *Egbert v. Boule*, 596 U.S. 482 (2022), and the

Ninth Circuit's decision in *Pettibone v. Russell*, 59 F.4th 449 (9th Cir. 2023), Plaintiff filed an

amended complaint asserting claims only against the United States under the Federal Tort

Claims Act ("FTCA"). Defendant then moved to dismiss certain claims, which the Court granted

in part and denied in part,[1] and granted Dundon leave to file a Second Amended Complaint.

ECF 57.

On December 16, 2024, Dundon filed his Second Amended Complaint, alleging tort

claims against the United States for false arrest, battery, intentional infliction of emotional

distress ("IIED"), negligence, and negligent infliction of emotional distress ("NIED"). ECF 61.

On January 17, 2025, Defendant answered the Second Amended Complaint. ECF 64.

Now before the Court is Plaintiff's Motion to Compel, ECF 85. Plaintiff moves for an

order compelling Defendant to produce discovery concerning:

1. The Temporary Restraining Order ("TRO") that the Court entered on July 23, 2020, in the matter captioned *Index Newspapers, LLC v. City of Portland*, No. 3:20-cv-1035-SI (D. Or.), and the federal government's actions in response to that TRO;

2. Training materials related to crowd control and treatment of journalists; and

3. Defendant's efforts to identify officers involved in incidents involving Plaintiff.

**A. Standards for Discovery**

Under Rule 26,

---

[1] The Court dismissed Plaintiff's false arrest and battery claims as to certain alleged conduct, with leave to amend. The Court dismissed Plaintiff's claims for intentional and negligent infliction of emotional distress because Plaintiff alleged emotional harm in only a conclusory manner. Notable for the pending motion, the Court rejected Defendant's argument that its allegedly negligent conduct was subject to the FTCA's discretionary function exception, because Plaintiff adequately alleged a constitutional violation arising from a state tort. The Court also concluded that Plaintiff alleged physical harm sufficient to fall within Oregon's "physical impact rule" for Plaintiff's claim of negligent infliction of emotional distress. *See* ECF 57.

PAGE 2 – ORDER

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

## B. Plaintiff's Discovery Request for TRO-Related Materials

Dundon asserts that evidence regarding Defendant's response to the TRO is relevant to show Defendant's intent, which is relevant to Plaintiff's IIED claim. Dundon argues that if federal officials failed to disseminate the TRO, failed to implement meaningful compliance measures, deliberately or recklessly ignored the TRO's requirements, or continued to engage in conduct prohibited by the TRO, that would be relevant and admissible circumstantial evidence that Defendant intended to inflict severe emotional distress upon Plaintiff as a journalist.

Plaintiff cites *United States v. Bibo-Rodriguez*, which held that subsequent act evidence is valid to prove intent and knowledge. 922 F.2d 1398, 1400 (9th Cir. 1991). Defendant responds that *Bibo-Rodriguez* is inapplicable because it was a criminal case, and Plaintiff brings a civil case.[2] The Court does not see a meaningful distinction between application here and in the many

---

[2] Defendant asserted arguments in the section of its brief titled "Plaintiff's Claims" in which Defendant contends that discovery should not be allowed for certain claims because similar claims have been dismissed by other courts or because of the discretionary function exception to the FTCA. Defendant, however, answered Plaintiff's Second Amended Complaint, and thus all claims alleged in that pleading are currently proceeding in this case and a fair subject for discovery. Additionally, the Court already rejected these arguments by Defendant in resolving Defendant's motion to dismiss Plaintiff's First Amended Complaint. The Court, therefore, focuses on the arguments in Defendant's "Argument" section.

criminal cases allowing subsequent act evidence to prove knowledge and intent. *See, e.g., id.*; *Benchwick v. United States*, 297 F.2d 330, 336 (9th Cir. 1961) ("When the defendant's intent is at issue, a wide range of evidence as to subsequent acts may well be relevant to the issue of prior intent, and hence be admissible."); *United States v. DiRoberto*, 686 F. App'x 458, 461 (9th Cir. 2017) ("Intent also may be proven by acts that were subsequent to the actions at issue.").

More importantly, the Ninth Circuit for decades has allowed subsequent act evidence to prove municipal liability in civil claims brought under 42 U.S.C. § 1983. *See, e.g., Henry v. County of Shasta*, 132 F.3d 512, 519-20 (9th Cir. 1997), *opinion amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998). The court "reiterate[d] our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry." *Id.* at 519. The Ninth Circuit quoted the Third Circuit, in stating: "As subsequent conduct may prove discriminatory motive in a prior employment decision, and subsequent acts may prove the nature of a prior conspiracy, so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy." *Id.* at 520 (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985). As noted in that quote, subsequent act evidence is relevant to prove intent in employment cases. *See, e.g., Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 524-25 (3d Cir. 2003); *Goold v. Hilton Worldwide*, 2014 WL 4629083, at *6 (E.D. Cal. Sept. 15, 2014). Courts look to factors such as temporal proximity and changed circumstances. *Ansell*, 347 F.3d at 524-25. Thus, the underlying reasoning for allowing subsequent act evidence to prove intent and motive in these various civil and criminal contexts applies with equal force to Plaintiff's IIED claim. Evidence about Defendant's implementation of the TRO is relevant to intent and is not too remote in time.

PAGE 4 – ORDER

Defendant also argues that Plaintiff is impermissibly trying to use this evidence to show the intent of the federal government as a whole, or supervisory personnel, and then impute that intent onto individual law enforcement officers. But that is not what Plaintiff is doing. Evidence of how supervisory personnel instructed the deploying officers about the TRO and responded to purported violations of the TRO is circumstantial evidence relevant to whether individual officers were emboldened, or even implicitly encouraged, intentionally to attack journalists. That evidence, along with evidence of the specific attacks on Plaintiff (including the fact that a federal officer was close to Plaintiff, faced Plaintiff, could see Plaintiff's "Press" markings, and nevertheless directly fired at Plaintiff), are all relevant that a reasonable jury may consider in evaluating Plaintiff's claim, including its intent element.

Defendant also argues that this evidence is not relevant because it applies to law enforcement personnel other than the officers who allegedly injured Plaintiff. Defendant, however, has stated that it cannot identify any specific law enforcement officer who assaulted Plaintiff. Thus, it is reasonably probable that evidence regarding TRO compliance will involve one or more of the officers who assaulted Plaintiff. Additionally, Defendant cannot hide behind its purported inability to identify its own personnel to avoid relevant discovery. If it is unable to identify the specific officers, then the conduct of all similarly situated officers is relevant. Further, evidence of how supervisory personnel responded to the TRO and instructed the deployed federal officers also is relevant circumstantial evidence relating to the officers on the street, including the unidentified officers who assaulted Plaintiff. For all these reasons, the Court rejects this argument by Defendant.

Finally, Defendant cites *Puente v. City of Phoenix*, 123 F.4th 1035 (9th Cir. 2024), to argue that "as a matter of law," later occurring events have "minimal relevance" to First, Fourth,

PAGE 5 – ORDER

and Fourteenth Amendment claims. That, however, is not what *Puente* held. In the context of the Fourth and Fourteenth Amendment claims for excessive force, given the specific facts of the case, the court concluded that the claims were "governed by the 'purpose to harm' standard." *Id.* at 1056. The Ninth Circuit, applying that standard, found no evidence in the record of a purpose to harm, particularly because "[t]he level of force [in *Puente*] is not so gratuitous as to give rise to a reasonable inference that it was applied for the purpose of inflicting harm rather than for the 'legitimate law enforcement objectives' of 'self-protection, and protection of the public'" and "the undisputed record evidence about the officers' overall restrained management of the protest prior to the decision to [disperse]." *Id.* (quoting *Ochoa*, 26 F.4th at 1056). The Ninth Circuit then rejected the argument that a commemorative coin created by an "unknown" person and distributed by "several" officers was sufficient to support a contrary inference regarding the intent of the officers. The court noted such later-occurring events had minimal relevance because it occurred after the force had taken place.

Here, however, Plaintiff alleges that the force used *was* gratuitous and applied for the purpose of inflicting harm rather than for legitimate law enforcement objectives. There is no "undisputed" evidence to the contrary. Indeed, the evidence at this stage supports Plaintiff's allegations, given the Court's findings in *Index Newspaper* that supported the entry of the preliminary injunction. Further, the subsequent acts alleged here are not tangential to the underlying intent, such as owning or viewing material hostile to Plaintiff, but are directly material, because it involves the use of force itself. Thus, at least at this stage of the litigation, this case is unlike *Puente* for Plaintiff's claims involving use of force.

Regarding the First Amendment retaliation claim addressed in *Puente*, the Ninth Circuit recited the facts showing how the police had coordinated with protesters, monitored the protest

PAGE 6 – ORDER

peacefully for hours, initially responded to incidents with restraint, and only dispersed the crowd after there was an "objective clear and present danger." *Id.* at 1063. Based on those facts, the court concluded that no reasonable jury could conclude that the dispersal order was motivated by an antipathy toward the plaintiffs' speech. *Id.* Also in that case, the Ninth Circuit rejected the persuasiveness of the later conduct regarding the commemorative coin "in the context of all of the circumstances of this case" as a reasonable basis to infer that the officers' immediate response to clear and present danger was instead motivated by hostility to protesters' views. *Id.* at 1063-64. The alleged facts in the pending lawsuit, however, are quite different from the facts in *Puente*, and this holding is limited to its facts. Defendant's reliance on *Puente* to avoid discovery is, therefore, unavailing.[3]

Plaintiff also asserts that the TRO evidence is relevant to causation and damages. Other than an introductory statement that Plaintiff has "averred that his money damages claims . . . arise out of three use-of-force events on July 11, 17, and 22, 2020," Defendant does not respond to this argument. Defendant is correct that Plaintiff alleges three use-of-force events. But Plaintiff also alleges that he was subjected to escalating violence through the end of his assignment on November 3, 2020. SAC ¶ 7. Plaintiff additionally alleges that, among other things:

> Plaintiff's mental and emotional suffering includes post-traumatic stress and anxiety relating to the injuries he suffered while he was undertaking his work as a journalist, extreme and continuing fear and anxiety for his physical safety when undertaking daily work; extreme stress relating to his inability to continue that work;

---

[3] Additionally, minimal relevance is still relevance. *Puente* was analyzing the case at summary judgment. For discovery purposes, relevance is a low bar. *See Unigestion Holdings, S.A. v. UPM Tech., Inc.*, 2021 WL 7710796, at *2 (D. Or. Oct. 19, 2021) ("Relevance, however, is a low bar.").

> depression; fear, anxiety, and distrust of law enforcement
> officers . . . .

SAC ¶ 44 (false arrest claim); *see also id.* ¶ 47 (same, for battery claim); *id.* ¶ 51 (same, for IIED claim); *id.* ¶ 59 (same, for NIED claim). Thus, Plaintiff alleges that he suffered ongoing fear and anxiety relating to his physical safety in performing his journalistic duties in Portland and whether he could continue his work in Portland. The TRO evidence that Plaintiff requests is relevant to the reasonableness of his alleged fear and anxiety.

Defendant states generally the requested discovery is not proportional, but provides no argument or facts in support of this contention. The Court thus finds this argument abandoned. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Noh*, 2022 WL 20581960, at *2 (C.D. Cal. Jan 18, 2022) (noting that a court is not "required to address perfunctory and undeveloped arguments" (quoting *Khademi v. S. Orange Cnty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002))); *Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014) (declining to address an "undeveloped argument . . . not supported by citations to the record, argument, or any legal authority"); *Crime Just. & Am., Inc. v. Honea*, 876 F.3d 966, 978 (9th Cir. 2017) ("Issues raised in a brief which are not supported by argument are deemed abandoned." (quoting *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988))). The Court grants this portion of Plaintiff's motion to compel.

## C. Plaintiff's Discovery Request for Defendant's Training Materials

The dispute over training materials arises from an Inspector General's report about the Department of Homeland Security ("DHS") law enforcement deployment in Portland, Oregon. This report references a memorandum from Federal Protective Services ("FPS") officials requiring officers cleared for cross-designation deployment to be limited to their "current law enforcement skill sets and equipment." ECF 86-8 at 13. This report also stated that seven out

PAGE 8 – ORDER

of 63 officers had received riot and crowd control training. Thus, Plaintiff contends that there "must be" training materials available, at least involving the training that these seven officers received.

Defendant argues in response that only the officers involved in Plaintiff's July 17th incident were from FPS, and that the officers in the other two incidents were from the U.S. Marshals Service ("USMS"). But a document does not have to be relevant to every claim or allegation to be subject to discovery. Defendant also represents that no responsive documents exist other than the general use of force policies previously produced and Plaintiff cannot request more documents "when there is no colorable basis for them to believe that such documents exist and are being withheld." *Martin v. Hannu*, 2023 WL 11113646, at *2 (D. Or. Aug. 15, 2023). But Plaintiff has provided a colorable basis—the Inspector General's report.

Defendant also again raises the argument that because it cannot identify the individual officers involved, it cannot produce documents specific to their training. It was Defendant's choice to deploy officers without any way to identify them. Defendant cannot use that fact as a shield from discovery. Defendant must provide relevant training materials for all similarly situated federal officers (for example, in the FPS or the USMS). It will be for a later determination whether specific evidence is admissible at trial. The Court rejects Defendant's relevance arguments for the same reasons it rejected them above and grants this aspect of Plaintiff's motion.

## D.  Plaintiff's Discovery Request for the Identities of the Relevant Officers

Plaintiff requests discovery on the efforts Defendant has made to identify the specific officers involved in the assaults on Plaintiff, citing *United States ex rel. Terral River Serv., Inc. v. Road Builders, Inc.*, 2021 WL 6882333, at *4 (S.D. Miss. Jan. 4, 2021) (allowing a deposition under Rule 30(b)(6) to include "questions regarding the documents produced by Terral River

PAGE 9 – ORDER

during and after Stogner's deposition and Terral River's efforts to locate responsive documents").

Defendant responds that "discovery on discovery" is not relevant or proportional. Defendant contends that it has determined that it is "likely" that the officers in the July 11th and 22nd incidents were from the USMS, and that it produced the USMS rosters for Portland officers for those dates and produced "available use of force reports" for those dates. Defendant also produced the use-of-force report from July 17th that likely related to Plaintiff.

Defendant argues that Plaintiff has not established the factual predicate required in this Court to obtain discovery on discovery. Defendant quotes *Cahill v. Nike, Inc.*: "When the discovery sought is collateral to the relevant issues (i.e., discovery on discovery), the party seeking the discovery must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request[.]" 2020 WL 4584241, at *4 (D. Or. Aug. 10, 2020). The remainder of the quote omitted by Defendant, however, is "in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*." *Id.*

The specific identification of the federal officers is a key issue in this case, as is evident by how frequently Defendant raised its inability to identify the specific officers in defending against this motion. Defendant states only that a "reasonable review of available contemporaneously created documents" revealed the information relating to the identification of the officers. This statement is filled with qualifiers. The Court finds that Plaintiff's concern about the thoroughness of Defendant's investigation to be justified. Further, Plaintiff's request does not

PAGE 10 – ORDER

endanger extending discovery *ad infinitum*. Plaintiff requests a deposition under Rule 30(b)(6) on Defendant's efforts.[4] This is reasonable.[5]

<strong>CONCLUSION</strong>

The Court GRANTS Plaintiff's Motion to Compel, ECF 85.

**IT IS SO ORDERED**.

DATED this 3rd day of August, 2026.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge

---

[4] In the "Conclusion" section of Defendant's brief, it requests that the Court order Plaintiff to issue a new Rule 30(b)(6) subpoena that identifies topics with "painstaking specificity," quoting *Memory Integrity v. Intel*, 308 F.3d 656, 661 (D. Or. July 29, 2015). Defendant, however, did not make the argument that Plaintiff's Rule 30(b)(6) deposition topics were lacking in specificity. As noted above, this type of conclusory statement is insufficient to raise an argument. *See Ventress*, 747 F.3d at 723 n.8; *Honea*, 876 F.3d at 978.

[5] Defendant also raises concerns that because the investigation was done at the behest of counsel, any information is protected by the attorney-client privilege and attorney work product doctrine. Asking a designated 30(b)(6) witness what Defendant *did* to locate information does not risk the attorney-client privilege, which only protects *legal advice*. Additionally, Rule 26(b)(3) of the Federal Rules of Civil Procedure only protects attorney work product from discovery when the materials were: (1) "prepared in anticipation of litigation or for trial" and (2) prepared "by or for another party or its representative." Courts in the Ninth Circuit do not "extend[ ] the work product privilege outside the literal bounds of the rule." *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989). A person's *conduct* in investigating a fact is not work that is prepared in anticipation of litigation. Even if it were, it would be "fact" work product. Fact work-product may be ordered produced upon a showing of substantial need for the information and that the information cannot be otherwise obtained without undue hardship. Fed R. Civ. P. 26(b)(3)(A)(ii); *Admiral Ins. Co. v. United States Dist. Court for the Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989). These elements are met for Plaintiff's request for information relating to Defendant's efforts to identify the individual officers.

PAGE 11 – ORDER